## In Re: Appeal of R&R Lounge, Inc.

*William T. Malone,* for the Pennsylvania Liquor Control Board.

*W. Hamlin Neely,* for petitioner.

DAVISON, *J.*, March 13, 1985—This is an appeal from an order of the Pennsylvania Liquor Control Board (board) revoking Restaurant Liquor License no. TR-9302 and Amusement Permit no. TAP-9302 for premises known as Freddie's (Licensee), 222-224 East Hamilton Street, in the City of Allentown, County of Lehigh, and Commonwealth of Pennsylvania.

On November 22, 1983, the board cited licensee for permitting solicitation of patrons for immoral purposes upon the licensed premises on October 5, 6, 7 and 18, 1983. A hearing was held thereafter and, on September 18, 1984, the board concluded that the evidence established that licensee had in fact violated the provisions of the Liquor Code in such fashion and on such dates and revoked the license.

On January 7, 1985, a hearing de novo, as required by the Liquor Code, Act of April 12, 1951, P.L. 90, Art. IV, as amended, 47 P.S. §4-471, was held before this court, at which time an enforcement officer testified for the board and a representative and employee of licensee testified on behalf of petitioner. The scope of the court's authority on appeals from the board is clearly delineated in Carver House, Inc. Liquor License Case, 454 Pa. 38, 310 A.2d 81 (1973):

"[T]he court on appeal from a suspension . . . 'shall, in the exercise of its discretion, sustain, reject, alter or modify the findings, conclusions and penalties of the board, based on the findings of fact and conclusions of law as found by the court.' . . . [I]t is by now well established that on such appeal the lower court must make findings of fact on the material issues different from those as found by the board before the action taken by the board can be reversed or changed. Unless the lower court's change or modification is so grounded, it cannot stand." (Citations omitted.)

It is the court's duty to evaluate the credibility of the witnesses, weigh the testimony and, as this is a civil proceeding, determine whether or not the violations charged have been established by a preponderance of the evidence. In re Moravian Bar, Inc., 200 Pa. Super. 231, 188 A.2d 805 (1963); Smart, Inc. v. Pennsylvania Liquor Control Board, 35 Leh.L.J. 346 (1973), aff'd 16 Pa. Commw. 37, 328 A.2d 923 (1974). Where such charges have been so established by competent evidence, the court, even where it considers the penalty too severe, in the absence of finding different facts, is powerless to reduce the penalty imposed by the board. Pennsylvania Liquor Control Board v. Pace, 218 Pa. Super. 300, 280 A.2d 642 (1971); Pennsylvania Liquor Control Board v. Washington Sporting Club, 13 Pa. Commw. 257, 320 A.2d 851 (1974).

Board enforcement officer James Vitatelli (Vitatelli) testified that on October 5, 1983, at approximately 10:00 p.m., he entered the licensed premises and observed a male bartender on duty, later identified as Mark, and approximately 15 to 20 patrons. He saw three female patrons conversing with several of the male patrons. A caucasian female patron, later identified as Tina, engaged the of-

ficer in conversation, asking what he was looking for. He told her that he was looking for a girl to engage in sex at a bachelor party and asked what she would charge to engage in sexual relations with the guests at the proposed party. She responded $20 per person for oral sex, $25 for sexual intercourse, and $30 for a combination of those activities. She obtained a pen and paper from the bartender and wrote down her name, address and telephone number. She then gave it to the officer and started talking with another male patron. The officer then asked Mark, the bartender, if she was satisfactory. Mark said that he didn't know from experience, but that he had heard that she was "all right."

On October 6, 1983 at 11:45 p.m., the officer returned to the premises and observed that Mark was present as the bartender. Vitatelli then again engaged in conversation with Tina, discussing the possibility of sexual relations with her on a later date. Upon the officer's request, she expressed a willingness to have a black female, whom she identified as Frankie, available for $30 for the "best" sexual relations of his life. After Vitatelli inquired how he could reach Frankie about the party arrangements, she wrote Frankie's name and telephone number on a sheet of paper she had gotten from Mark and handed the paper over to the officer. Vitatelli then observed Tina proceed to another patron, engage him in conversation and exit the premises with that other patron. The officer then asked Mark about Frankie and was told that she was "supposed to be all right" and that she was "cool." The officer departed from the premises at 1:10 a.m. on October 7, 1983.

On October 18, 1983 at approximately 8:30 p.m., the officer returned to the subject premises. Upon entering the bar, he observed a female barmaid,

later identified as Diane, and eight patrons present. He noticed what he learned to be the female named Frankie seated at the bar. The female sat next to him and, in the course of the conversation with her, told her that he knew Tina. They discussed prices for various services available. When she finished telling the officer what her charges were for sexual intercourse and varied other relations, the officer turned to the barmaid and inquired as to her opinion of the female's abilities. The barmaid said she really did not know anything about the quality of that female's work.

Rebecca Smalley, who, with her husband, owns all of the outstanding stock of corporate licensee, was present at the licensed premises on October 6 and 7, 1983; the officer did not engage in any conversation with her.

Counsel for petitioner contends: (1) that the board's findings of fact and conclusions of law are inadequate as a matter of law; and (2) that the revocation penalties are too harsh in view of the lack of any prior citations.

Addressing petitioner's first argument, we regard as well established that basic findings of facts are essential to the validity of the decision of administrative agencies and such findings must be sufficiently specific to enable the reviewing court to pass upon questions of law. See Bell v. Commonwealth of Pennsylvania, Bureau of Vocational Rehabilitation, 62 Pa. Commw. 388, 436 A.2d 1072 (1981); Begis v. Industrial Board of the Department of Labor and Industry, 9 Pa. Commw. 558, 308 A.2d 643 (1973); McKinley v. State Board of Funeral Directors, 5 Pa. Commw. 42, 288 A.2d. 840 (1972); 2 Pa.C.S. §507.

Counsel for petitioner contends that the Liquor Control Board "in effect, made no independent find-

ings of fact or conclusions of law." However, the only obligation of the board is to explain its reasons for ordering the license revocation and bond forfeiture. See 47 P.S. §4-471; Liquor Control Board v. Camiel's Beverage Co., 7 Pa. Commw. 654, 300 A.2d 834 (1973); Pennsylvania Liquor Control Board v. Reda, 76 Pa. Commw. 76, 463 A.2d 108 (1983).

Here, following a hearing on April 11, 1984 before the hearing examiner, the board made the following findings of fact and issued an order revoking petitioner's liquor license and decreeing the bond forfeited: "The licensee, by its servants, agents or employes permitted upon the licensed premises solicitation of patrons for immoral purposes, on October 5, 6, 7, 18, 1983; . . .."

We reject petitioner's argument that the findings are tantamount to no findings and consequently a nullity.

While fundamental principles of fairness and due process are applicable to proceedings before administrative bodies, Taylor et al., Appellants v. Weinstein, 207 Pa. Super. 251, 217 A.2d 817 (1966), they are not synonymous with judicial process.[1] Reety v. Michigan, 188 U.S. 505 (1902), 47 L.Ed. 563, 23 S.Ct. 390; Commonwealth v. Cronin, 336 Pa. 469, 9 A.2d 408 (1939).

Section 504 of the Administrative Agency Law, 2 Pa.C.S. provides:

---

1. "Judicial process," is a term used to describe the work of the judiciary, including the functional aspects of the courts as they declare such rights and duties in specific instances presented by litigants. In the "judicial process," decisions may be made through methods, for reasons and by persons different from those in the administrative process. 1 Am. Jur. 2d Administrative Law § 11, 16, 17.

"No adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard. All testimony shall be stenographically recorded and a full and complete record shall be kept of the proceedings."

It has been held that notification in a manner reasonably calculated to afford notice of a proposed exercise of jurisdiction and an "opportunity to be heard"[2] are the essential requisites of due process in this area of the law. See Commonwealth Use of Unemployment Compensation Fund v. Lentz, 353 Pa. 98, 44 A.2d 291 (1945); Armour Transportation Company, Appellant v. Pennsylvania Public Utility Commission, 138 Pa. Super. 243, 10 A.2d 86 (1939). Petitioner has not questioned the adequacy of the hearing notice it received, nor has it argued that it was not given an "opportunity to be heard." Indeed, petitioner was vigorously represented by the same experienced counsel who is before this court.

We have reviewed the transcript of the proceeding before the board and conclude that it comports with due process. Due process does not require the board to state its findings in any particular manner; its findings are supported by a preponderance of the evidence, and its conclusions are sufficient and consistent with our own.

We now turn to petitioner's second argument, namely, that the revocation penalties are too harsh in view of the lack of any prior citations.

---

2. The "opportunity to be heard" consists of a party being entitled to be present at the hearing, to cross-examine witnesses, and to present testimony on his own behalf. See State Real Estate Commission v. Fenstersheib, 89 Dauph. 306 (1968).

It is beyond peradventure that the appropriate penalty against a liquor licensee in revocation cases is for the Liquor Control Board and not for the court. Unless there is a material change in the factual findings, the court may not substitute its judgment for that of the board in the imposition of a penalty. See In re Carver House, supra; Pennsylvania Liquor Control Board v. Pace, supra; 4-6 Club v. Pennsylvania Liquor Control Board, 442 Pa. 154, 275 A.2d 40 (1971); Pennsylvania Liquor Control Board v. Yugovich, 217 Pa. Super. 353, 272 A.2d 510 (1970); In re Alston, 214 Pa. Super. 32, 251 A.2d 808 (1969).

Since we have found no material change in the factual findings of the board, we may not consider any reduction in the penalty imposed by the board. Maple v. Pennsylvania Liquor Control Board, 207 Pa. Super. 237, 217 A.2d 859 (1966); In re East End Social Club of Frankford, 193 Pa. Super. 583, 165 A.2d 253 (1960).

For all of these reasons, we are obliged to affirm the order of the Liquor Control Board and dismiss the appeal.