In Re: Appeal of R.G.R. Enterprises, Inc., t/a Graeme Park Inn From Order of Pennsylvania Liquor Control Board. Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board, Appellant.

608

Argued April 7, 1977, before Judges CRUMLISH, JR., MENCER and ROGERS, sitting as a panel of three.

*J. Leonard Langan,* Assistant Attorney General, with him *Harry Bowytz,* Chief Counsel, and *Robert P. Kane,* Attorney General, for appellant.

*Michael J. Sheridan,* for appellee.

OPINION BY JUDGE MENCER, June 21, 1977:

In this appeal, we are once again faced with the question of the lower court's authority to modify a penalty imposed by the Pennsylvania Liquor Control Board (Board). After a de novo hearing, the Court

of Common Pleas of Montgomery County reduced the 30-day suspension which had been imposed by the Board to 10 days. Since the lower court modified the penalty without making significant and material changes in the facts as found by the Board, we reverse.

The Board found that an employee of R.G.R. Enterprises, Inc. (R.G.R.) served liquor or brewed beverages to a minor on November 3, 1974. The 30-day suspension was imposed after the Board found that R.G.R. had two prior citations for violation of the Liquor Code[1] (Code) within the last four years. R.G.R. appealed to the lower court where a hearing de novo was held pursuant to Section 464 of the Code, 47 P.S. §4-464. The lower court adopted the Board's findings concerning the November incident and the prior citations and made the following additional findings:

1. The licensee has always had a policy of firing any bartender found guilty of violation of the Liquor Code.

2. The licensee fired the previous bartender on the second citation which was also for a sale to a minor.

3. The licensee fired the barmaid for the incident of November 3, 1974.

4. The licensee had no personal knowledge of the sales to minors until notified by the authorities.

Opining that the penalty imposed by the Board was too severe, the lower court reduced the suspension to 10 days based on the additional findings.[2]

It is well settled that the lower court may not reduce the penalty imposed by the Board simply because

---

[1] Act of April 12, 1951, P.L. 90, as amended, 47 P.S. §1-101 et seq.

[2] See Section 471 of the Code, 47 P.S. §4-471.

it is considered too severe. *Pennsylvania Liquor Control Board v. Washington Sporting Club,* 13 Pa. Commonwealth Ct. 257, 320 A.2d 851 (1974). As to whether or not the additional findings made by the lower court here justified a modification of the penalty, we must be guided by the following applicable standard:

> The court of common pleas may change the penalty imposed by the Board 'only when it has made significant and material changes in the findings of the Board.' Noonday Club of Delaware County, Inc., Liquor License Case, 433 Pa. 458, 464, 252 A.2d 568, 572 (1968).
>
> It is now firmly established that the lower court must make findings of fact on the material issues different from those made by the Board before the action taken by the Board can be reversed or changed. Unless the lower court's change or modification is so grounded, it cannot stand. Carver House, Inc. Liquor License Case, 454 Pa. 38, 310 A.2d 81 (1973).

*Id.* at 259, 320 A.2d at 852.

Findings 1, 2, and 3[3] above concern R.G.R.'s policy regarding employees who have violated the Code and specific instances of the application of this policy. As such, these findings do not address the questions of whether and in what manner a violation of the Code occurred. While the policy may be an admirable one, we do not consider the findings on this point significant and material. They are relevant, if at all, *not* on the questions of the occurrence of a violation and the circumstances surrounding it, but solely on the issue

---

[3] As to finding 3, the record indicates that this finding is incorrect. The barmaid here was fired, but, according to the transcript, she was dismissed when the manager learned of a separate incident which occurred in December 1974. Although the incident in question here occurred in November 1974, the record indicates that the manager learned of the December incident first.

of what penalty should have been assessed after a violation of the Code had been found. If *Noonday Club, supra,* and *Carver House, supra,* and their progeny have made one thing clear in this area, it is that the Board has the primary responsibility for fixing penalties in Code violation cases. This case is thus distinguishable from one in which the lower court found that a violation of the Code had occurred once instead of twice as found by the Board, *Barone's, Inc. v. Pennsylvania Liquor Control Board,* 10 Pa. Commonwealth Ct. 563, 312 A.2d 74 (1973), or a case in which the lower court's findings on how a violation of the Code occurred differed from those of the Board, *Commonwealth v. M.S.G., Inc.,* 7 Pa. Commonwealth Ct. 540, 297 A.2d 556 (1972).

Similarly, since finding 4 was not on a material issue, it does not justify the reduction of the period of suspension. Lack of personal knowledge by the licensee or its officers of a violation of the Code is not a defense. *Fraternal Order of Eagles Easton Aerie No. 111 v. Pennsylvania Liquor Control Board,* 29 Pa. Commonwealth Ct. 646, 372 A.2d 1247 (1977) ; *Alston Beer Distributor Liquor License Case,* 214 Pa. Superior Ct. 32, 251 A.2d 808 (1969).

Order reversed.

ORDER

Now, this 21st day of June, 1977, the order of the Court of Common Pleas of Montgomery County is reversed, and the order of the Pennsylvania Liquor Control Board suspending for 30 days the hotel liquor license of R.G.R. Enterprises, Inc., for premises known as the Graeme Park Inn, is reinstated.